## McCALLUM *v.* McCALLUM.

ATKINSON, J. 1. Where a wife institutes an action against her husband for divorce and permanent alimony on the ground of cruel treatment, and applies for temporary alimony pending the suit, on the hearing

of the application for temporary alimony the presiding judge, in his discretion, may refuse it altogether on conflicting evidence as to cruel treatment; or if there is a minor child, he may award an amount for the support of the child, and refuse to award alimony for the wife. Civil Code (1910), § 2979; *Coley* v. *Coley*, 128 *Ga.* 654 (2) (58 S. E. 205); *Brisendine* v. *Brisendine*, 152 *Ga.* 745 (3) (111 S. E. 22). Applying the above principles, it cannot be held that the trial judge abused his discretion in denying temporary alimony to the wife.

2. In all cases where the custody of any minor child or children is involved between the parents, there shall be no prima facie right to the custody of such child or children in the father, but the court hearing such issue of custody may exercise its sound discretion, taking into consideration all the circumstances of the case, as to whose custody such child or children shall be awarded; the duty of the court being in all such cases, in exercising such discretion, to look to and determine solely what is for the best interest of the child or children, and what will best promote their welfare and happiness, and make award accordingly. Civil Code § 3022 (a); *Turner* v. *Turner*, 150 *Ga.* 191 (103 S. E. 413).

3. Under the pleadings and evidence the judge did not abuse his discretion in awarding the custody of one child to the father. .

*Judgment affirmed. All the Justices concur, except Hines, J., dissenting.*

No. 3956. MARCH 13, 1924.

Alimony, etc. Before Judge Kent. Twiggs superior court. June 30, 1923.

On June 23, 1923, Helen McCallum instituted an action for total divorce against James Ware McCallum, on the ground of cruel treatment. In addition to the prayer for a divorce, there were prayers for custody of the children, "temporary alimony and counsel fees," and "permanent alimony for the support of herself" and the children. The defendant filed an answer, denying cruel treatment, and alleging that petitioner deserted him without cause, and that he was willing to support the children and take the oldest child. At a hearing for temporary alimony the plaintiff testified: She lived with her husband from November 5, 1920, the date of their marriage, until the final separation, which occurred on September 27th, 1922, and did everything in her power to make him a faithful wife. He was cruel, always fussing and quarreling, and did not supply her or the children with necessary clothes. Just before the separation defendant was very unkind, and ordered petitioner to leave home, saying he had no more respect for her than for a negro cook. He had an uncontrollable temper, and it was impossible to do anything to please him. Two boy children were born to them, aged 19 months and 7 weeks, respectively. Peti-

tioner's health has been very poor since the birth of the first child, and most of the time she was unable to cook and do the house work; during such illness defendant left petitioner in bed, and was gone all day, leaving nobody to wait on her except her mother and a nurse; she begged him with tears in her eyes not to go, but he went off to buy some mules, paying no attention to her request. The second child was born after petitioner returned to her mother; defendant was not present at the time, made no inquiry and refused to pay the doctor's bill. Petitioner had to sell eggs and other commodities to get medicine for herself and shoes for the baby. She is in very poor health on account of defendant's cruel treatment, she has no way of earning a livelihood, and her parents have to care for her and the children. Defendant is an able-bodied man capable of earning $100 a month.

The defendant testified: He was never unkind to petitioner, and never fussed or quarreled at her; he tried to farm in Bibb County, but made a failure, thus making it necessary for him to go to a farm furnished by his father; after he moved to such farm petitioner spent most of the time with her mother, and finally refused to live with defendant unless he would furnish her with a cook; he was not able to hire a cook, and it was hard to get one, but he got a cook who stayed until June. He had no help on the farm, and was unable to get any. When they had no cook the only thing petitioner did was to clean up one room, sweep out the hall and kitchen, and cook for two people. She was raised to do nothing except to have a car and ride about all the time; and she wanted defendant to furnish her with a car and money to go to picture-shows, and he was not able to do this. He bought clothes and shoes for petitioner and the children when they needed them. Just before the separation petitioner and defendant had a misunderstanding about the use of her mother's car, and, after being provoked by petitioner and her mother; he finally said, "May be you had best go stay with your father awhile," but he did not mean any harm by that, and petitioner knew it. The next morning petitioner left over his protest, and has never returned. After the second child was born, petitioner wrote asking defendant what he was going to do for her and the children; to which he answered he would do anything he could if she would come back. He went to see peti-

tioner and begged her to return, but she refused to come back. She said she would live with him if he would move to Macon; but he had no job there and there was nothing he could do to make a living. He had a comfortable house to live in, and plenty to eat. He wants his oldest boy, and his mother and father will take care of him until he can make arrangements to do so.

J. A. McCallum testified: He was the father of defendant, who had no property. After defendant made a failure in Bibb County, witness told him, if he would come to Twiggs County, he would furnish him a farm and he could have all he could make out of it. Witness was able to take care of defendant's children and willing to do all he could for the oldest boy; he and his wife want the oldest boy, and are willing to take care of, raise, and educate him.

Mrs. Lottie Davidson testified: She was the mother of petitioner, and had been taking care of her and the children since the separation; was willing to keep the oldest boy and the baby, and was able and would do all in her power to raise and educate them.

The trial judge passed the following order: "The above-stated case coming on to be heard, and after hearing evidence, it is ordered that the defendant do pay temporary alimony in the sum of ten dollars per month for the youngest child, Chas. W. McCallum. That alimony is denied to the wife, Helen McCallum. That defendant do pay the sum of twenty dollars counsel fees to plaintiff's attorney. It is further ordered that the custody of the oldest child, J. W. McCallum, be and is hereby awarded to its father, the defendant J. Ware McCallum." The plaintiff assigned error on the following grounds: (*a*) The judgment is contrary to the evidence and without evidence to support it; (*b*) the judgment is contrary to law; (*c*) the court abused its discretion in denying temporary alimony to petitioner; (*d*) the court abused its discretion in awarding the custody of the oldest child to its father, there being no evidence to authorize the court to take the child from its mother, the evidence showing the child was being properly cared for, there being no attack upon the capacity of its mother to maintain it, and no attack upon the character of the mother, and it not being shown that it was to the best interest and welfare of the child to take it from its mother's custody.

*R. I. Stephens* and *C. A. Cunningham,* for plaintiff.
*Jordan & Moore,* for defendant.

HINES, J., dissenting. I dissent from so much of the opinion, of the majority of the court in this case as affirms the judgment of the court below awarding the possession of the child, J. W. McCallum Jr., to the father. This child was only 19 months old at the date it was taken from the mother and given to the father. I think the trial judge abused his discretion in taking a child of such tender age from the mother, who was not shown to be in any way unfit to care for and nurture it. I think the best interest of any child of such age will be subserved by giving the same to its mother, certainly until it should reach a more mature age. "Unless there are very controlling reasons to the contrary in a particular case, the mother is the proper custodian of infants of the age of those now in controversy." *Payne* v. *Payne,* 39 *Ga.* 174, 177.