## CASON v. CASON.

ATKINSON, J.  1.  As a general rule, in actions for divorce the courts will grant to the wife temporary alimony and necessary and reasonable counsel fees, on the ground that they are necessary to furnish her the means with which to test the sufficiency of the grounds of her libel for divorce.  Civil Code (1910), § 2976; *Sprayberry* v. *Merk*, 30 *Ga.* 81 (76 Am. D. 637); *Van Dyke* v. *Van Dyke*, 125 *Ga.* 491 (54 S. E. 537); *Waycaster* v. *Waycaster*, 150 *Ga.* 75 (102 S. E. 353).

2.  In a suit by a wife for divorce, the judge in the exercise of a sound discretion may deny temporary alimony for the support of the wife and grant alimony for the support of the children alone.  *Rochester* v. *Rochester*, 124 *Ga.* 993 (53 S. E. 399); *McCallum* v. *McCallum*, 157 *Ga.* 795 (122 S. E. 231).

3.  Pending a libel for divorce the judge in the exercise of a sound discretion may, as between the parties, temporarily award custody of the children.  Civil Code (1910), § 2971.

4.  Under proper construction of the order of the court awarding the custody of the children to the wife, such disposition was temporary and not permanent.

5.  Under the pleadings and the evidence in the case, the judge did not abuse his discretion in awarding temporary custody of the minor children to the wife on the terms specified in the order; nor did he err in awarding the wife attorney's fees and temporary alimony for support of the children.          *Judgment affirmed.  All the Justices concur.*

No. 4036.  JUNE 10, 1924.

Alimony, etc.  Before Judge Dickerson.  Clinch superior court. October 17, 1923.

On October 1, 1923, Annie S. Cason instituted an action for divorce in the superior court of Clinch County, and prayed also for permanent alimony, temporary alimony, attorney's fees, and custody of two infants the issue of the marriage, both being girls, one of them two and a half years old and the other nine months old. At an interlocutory hearing on October 17, 1923, the judge awarded custody of the children to the mother, with privilege to the father of seeing them at stated intervals; and awarded the plaintiff twenty-five dollars attorney's fees, payable in five monthly installments, and seven dollars per month to the mother for support of the children, until the jury should pass on the case.  The exception is to this judgment.  The petition alleged that defendant had told petitioner to leave and go home to her parents; but this allegation was denied, and there was no evidence tending to support it.  Other allegations as to the cause of the separation were: that "on divers days and times before August 4th, 1923,  .  .

defendant cursed and abused . . petitioner and . . petitioner's mother and father, and on several occasions . . threatened to beat . . petitioner, . . accused her of several things which are not becoming to any lady, . . accused . . petitioner of being familiar with the men boarders that were boarding at their house, . . would come home drunk and while in an intoxicated condition would accuse petitioner of things she had no idea of doing," and curse and abuse her, "would not buy her clothing, . . would curse and abuse her" when she requested him to buy clothing; and that the foregoing were acts of cruelty which petitioner had not condoned, and that they caused her mental anguish and to suffer. The defendant filed a demurrer on general and special grounds; also an answer. The answer denied all the allegations as to his misconduct, and set up that petitioner left him without cause and went to reside with her parents and remained away over his objection.

The plaintiff as a witness in her own behalf testified that she had to separate from defendant, on account of his "cruel treatment." The treatment consisted of "continuous abuse" of her, which caused her mental anguish and suffering, and which, she being "of a nervous disposition," was unable to bear; "he came home drunk sometimes, and would abuse her; . . he always spoke disrespectfully of her parents, . . [he] cursed her [and] her people . . before the children; . . he didn't provide the necessary clothing for her and for the children; . . he never bought but one dress for her and one dress for each of the children; . . [he] accused her of other men," that is of accepting tobacco from men who boarded with defendant and herself. She also testified that the defendant was 31 years of age, strong and able-bodied, and able to support herself and the children; that he owned 100 acres of land in the county, which was all the property he owned; petitioner did not own any property. On cross-examination witness testified that she loved her husband at the time of the marriage, but had ceased to love him several months prior to the separation; that for some time prior to the separation they had at their home 3 or 4 boarders; that her husband would assist her in the preparation of the meals when he would come home from his work, and would wait on the table; that he built fires in the stove, helped about the kitchen, and brought in wood and

water; that he was a farm worker on a rented place, and that sometimes instead of working he would lie around the house and fuss at her; that at the time of the marriage she used snuff, a fact that was known to the husband, and after the marriage he objected to her using snuff; he smoked cigarettes, which was objectionable to her; each agreed to refrain from such habits, but neither kept the agreement; petitioner's parents brought some snuff to her and defendant threw it in the fire; petitioner went to live with her parents, and earns her support and maintenance with them by working as one of the family; she is able to work; she has the youngest child, and the defendant the other; he took it during her absence after the divorce papers were filed.

The defendant testified, that he did not know of his wife's intention to separate from him; she went to her father's to spend Saturday night, and talked about how to get back Sunday; she said she would get her brother's wife to bring her back to Homerville, and defendant would meet her there; there was no unpleasantness of any kind at the time she left; plaintiff having failed to return to Homerville in accordance with her promise, defendant went to her parents' home for her Sunday afternoon; on his arrival she informed him she was not going back; plaintiff's brother came out of the house armed with a gun and informed defendant that his wife was never going back; a fight ensued, during the course of which defendant was stabbed in the back by plaintiff's father; defendant always provided for his wife and children as well as he was able; he bought for them everything that she ever asked him to buy; when he would go to town on Saturday afternoon she would give him a list of what she wanted, and he would purchase it; he had purchased as many as 3 pairs of shoes for the oldest child, and bought several dresses; he didn't know what they wanted or what they needed, except as she told him; he was never drunk, nor did he ever curse in her presence; they had a little quarrel about some snuff; on that occasion defendant got angry when she threatened to shoot him, and did say more than he ought to have said; he never told his wife to leave and go back to her parents, but she constantly threatened to leave and go back to them; her parents entertained "ill feelings" against him; he owned 100 acres of wild unimproved land valued at about $250, which was subject to a lease of 8 years for turpentine pur-

poses, and was incumbered by a mortgage of approximately $100; plaintiff did not help to pay for the land; he was able and willing to support his wife and children if they would live with him, but he was not able to support them living in a state of separation; he was living on a rented farm and depended upon his labor on the farm and certain work he was doing helping to drive cattle; he was making about $1.00 per day driving cattle about 2 days in the week; he wanted his children, but more especially the older one, and felt he could amply provide for the child and take care of it; relatives, some of whom lived with him, were able and would help take care of the child; the plaintiff's separation was voluntary without any fault whatever on his part; he never "accused his wife of other men;" on one occasion he found a piece of tobacco in the kitchen, and asked petitioner where she got it; she told him it was none of his business and she was not going to tell him, and he told her that was all right, he just asked her the question and didn't think she would mind telling him, . . . that he had rather she would use tobacco than to use snuff, but if she was so persistent in not telling him where she got it that he might think it was some of those boarders that had given it to her, and it might look a little familiar.

T. W. Hodges, sworn for the defendant, testified that he had known the defendant for a good many years; that he was a man of good character and reputation; that he had never seen him intoxicated or drinking; that during the 4 months prior to the separation he had dinner with them several days every week, and sometimes spent several hours during the day; that he never saw any unpleasantness between them; at the time of the separation witness brought petitioner from their home to Homerville; he knew nothing about any separation; thought that she was just going home to spend the week-end and come back Sunday; her husband was there at the time she left, and there were no unpleasant words between them, and so far as he could see everything was pleasant and congenial; he knew nothing against her character and reputation or against any of her people; their reputation was good, and he had known them all his life. W. V. Musgrove testified that defendant's character and reputation were good, and the character and reputation of his father and mother were good also; that the character and reputation of the plaintiff and her family

were good; that he had never seen the defendant drunk, though he had seen him drinking a little. Mr. Gallman, sworn for the defendant, testified that he boarded with plaintiff and defendant about 4 months prior to the separation; that he thought defendant and his wife were getting along well; he never saw any mistreatment of the wife by the husband; never heard any unpleasant words spoken; they always had plenty to eat; defendant helped his wife about the kitchen, getting the meals on the table, waited on the table while they were eating, brought in wood and water for her; witness was present at the time plaintiff separated herself from her husband; he saw no signs of unpleasantness then or at any other time; he saw her leave in the car, and was greatly surprised when he learned that she did not come back; he had never seen the defendant intoxicated. Two other witnesses testified substantially to the same effect.

In rebuttal the plaintiff testified that she was crying one day and told the witness Mr. Gallman that she was crying because her husband had been abusing her; that when she left home she did not take any clothes with her except such as she would need for Saturday and Sunday; the reason that she did not let her husband know that she was not going to come back was that she was afraid he would not let her have the children; she did not intend to come back when she left; she could stay with her father and mother and take care of the children there, and if for any reason she should have to leave them she had brothers and sisters with whom she could live and take care of the children; she admitted the incident recited by her husband about the piece of tobacco, and stated that was what she had reference to when she said her husband accused her of other men. The judgment rendered by the court was:

"The above named and stated case coming on for a hearing and after hearing the evidence thereon and argument, it is considered, ordered and adjudged that the defendant, Lewis Cason, do pay to R. G. Dickerson Jr., P. O. Valdosta, Ga., twenty-five dollars for counsel fees in the above-stated case, and said fees to be paid as follows:— Five dollars each month and to be sent by the said Lewis Cason to R. G. Dickerson Jr. on the first day of each month.

"Ordered further that the custody of the two minor children,

Mildred Cason and Geneva Cason, be awarded to their mother, the plaintiff.

"Ordered further that the said Lewis Cason pay to Mrs. Annie Smith Cason seven dollars per month for the support of the above mentioned children until a jury could pass on said case and that the seven dollars be paid by the seventeenth of each month. That five dollars of said seven dollars be not paid during the first five months.

"Ordered further that the defendant, Lewis Cason, be allowed to see the above mentioned children every two weeks.

"Ordered further that if the relatives of Mrs. Annie Smith Cason interfere with the said Lewis Cason and deprive him of seeing his said children then Mrs. Annie Smith Cason is required to bring said children to some point in Homerville, so that the said Lewis Cason can see the said children."

The grounds of exception to the judgment were:

"(a) Because the plaintiff fails to set forth a cause of action in her declaration that will entitle her to alimony, temporary or permanent.

"(b) For the reason that the evidence shows that the wife voluntarily abandoned the husband and for this reason she cannot legally recover temporary alimony and attorney's fees or retain the possession and custody of the children.

"(c) For the reason that the evidence of all the witnesses in the case, without conflict, shows that for several months prior to the separation whatever disagreements had arisen between the plaintiff and the defendant or whatever mistreatment or conduct upon the part of the husband towards the wife, she had prior to the separation condoned the same and had without provocation, uncondoned, voluntarily separated herself from her husband without just cause or excuse.

"(d) For the reason that the evidence is without conflict that the defendant on the date of the trial had possession of the oldest child and there was no evidence in the record authorizing the court to award the possession of the child to the mother, and in so doing the court abused the legal discretion vested in the court.

"(e) For the reason that if all the allegations in the plaintiff's petition are taken as true, they are insufficient to withstand the general and special demurrers of the defendant, and it was the

duty of the court to take these demurrers into consideration in passing upon the case.

"(f)   For the reason the court allowed the plaintiff to amend her petition, which petition did not show a cause of action and was therefore not capable of amendment.

"(g)   For the reason that if all of the allegations in the plaintiff's petition were proved by the plaintiff without conflict upon the part of the defendant, it would not entitle the plaintiff to temporary alimony and attorney's fees or to the custody of the children.

"(h)   For the reason that so much of the order of the court awarding the custody of the children is illegal and void, in that upon the temporary hearing the order in its nature makes a final, full and complete and permanent disposition of the children by awarding the same to the mother, as follows: 'Ordered further that the custody of the two minor children, Mildred Cason and Geneva Cason, be awarded to their mother, the plaintiff.' The court was without power or authority to award the custody of the children to the mother on the temporary hearing for a period of time in extent of the final verdict and decree in the case."

*H. C. Morgan* and *R. A. Hendricks,* for plaintiff in error.

*R. G. Dickerson Jr.,* contra.